The final set of cases on for argument, and we'll sort of hear them back-to-back, but I want to focus on the first one first, and then the fee issue second is Dynamic Concepts v. Tri-State Surgical. May it please the Court, I'm Matthew Press for Plaintiff's Appellant's Point 4 Data Corporation and Dynamic Concepts, Inc. It's undisputed that rather than pay for a license upgrade, Tri-State hired an international computer hacker to remove the security protections from Plaintiff's Genesys and Unibasic computer software, creating unlawful versions which could be used by an unlimited number of users on an unlimited number of machines. And that's the factual construct we take with it as we analyze summary judgment being awarded against your client? That's correct, Your Honor. All right. That's correct. In its subsequent fee decision, which is the subject of the other appeal, the district court stated on page 15 that the record provides sufficient basis for Plaintiff's prima facie case and supports an objectively reasonable legal claim to protect Plaintiff's software, one of the goals of the DMCA was to strengthen the digital walls protecting content and punish those who, like Tri-State, attempted to end-run those protections. Nevertheless... Where are you reading from? This is from page 15 of the fee decision, which is the subject of the cross-appeal. Do you know where this is? I can get to it in the appendix. In the appendix. I believe that it would be in the... It's in the special appendix. It would be in the special appendix. Page 189. Is that the fee decision? I can't tell you as I stand here. That's all right. I'll find it. Go ahead. And nevertheless, on the party's cross motions for summary judgment, the district court erroneously found that plaintiffs were entitled to no remedy for Tri-State's  So let me tell you what I'm wrestling with, Mr. Press. It seems to me that district courts, trial courts, and we have a former trial court judge on my right and a sitting trial court judge on my left, wrestle mightily, and all of us who've been in front of them know they do this, with maintaining schedules, particularly in cases which seem to be... We'd have a problem with this case in Vermont because there was so much back and forth that not one little stone was left unturned, and the attorneys were pretty much at each other. But there was a deadline set for disclosure of experts, and plaintiffs here ran up against that in not having an expert disclosed. And at least from my reading of the affidavit, one of the affidavits, and maybe both of them, I can't remember, there was clearly an expert opinion, what I would characterize as an expert opinion regarding whether these things were copyrightable, right? Well, Your Honor, first of all, as to your statement that the parties ran up against a deadline, this was the testimony, and it's in the summary judgment declarations of Mr. Burden and Mr. Chadwick. The testimony in question, I would contend, under the relevant standards, the cases at United States v. CUNY, the Regas case, is not expert testimony. The advisory committee notes to the 2000 amendment to Rule 701 make very clear that the rule was preserving the law up to that time and to the present, that merely because the subject matter of a case is scientific and technical. Let's talk about paragraph 4 of the Burden affidavit then. Let's get right to the parts that she found were expert testimony. No other ERP system utilizes this unique combination of menu, program, and operator organization. That's on page 461 of the deferred joint appendix. Why is that not an expert view of Mr. Burden? Oh, Your Honor, first of all, first of all, that statement doesn't really bear very much on the copyrightability question. This is just a statement. Everything in the room. Is it an expert statement, though? It's not an expert statement at all. This is Mr. Burden talking about his own product. Okay? Under the standards of CUNY, if you're a precipient witness speaking about something that you have, about which you have personal knowledge, okay, and here he's talking about the software that he wrote and his business, this is not expert testimony. Expert testimony is testimony that relies on external knowledge, external body of knowledge. Let me just read the next paragraph. Of course. Genesys is able to successfully run a wide variety of business models because of its unique set of company flags and system flags that define to Genesys the special characteristics of each individual company utilizing Genesys. How is that not expert based on his experience in the field? Well, once again, this is not expert testimony because I know you're telling me that, but tell me why it's not. Why it's not. It's because he is a participant in the market. This is like a sales pitch. This material is like sales material that he would say going out speaking to a potential customer that might buy this product. This is marketing speak. Can I ask one? No, you go ahead. Okay. Paragraph 15 of the Burden Declaration, which concludes that it constitutes copyrightable subject matter under Title XVII of the United States Code. Your Honor, the. You'll concede that one. Well, that's something I think that I put that in there because he's testifying to facts that I was going to submit in my argument in connection with copyrightability. Now, what I'd like to note is that. So I think what's clear in these examples, counsel, and I think it's clear from reading the cases, that the line between lay testimony and expert testimony, particularly in the context of an employee of an entity, and here we've got the CEOs and the software developers, who have as a personal matter witnessed to the development of the technology and the like, doesn't mean that anything that they say won't cross the line into expert testimony, but that it's a hard line, and it's a line that district court judges police all of the time. And I think what we see here is a district court judge looking carefully as to when the line was crossed with respect to certain paragraphs, where the inferences that are being made and the method of inference drawing is not simply relying on personal observations from the fact of being the employee and software developer, but based on the kinds of inferences that a lay witness would not have access to. And isn't that the distinction that the cases require being drawn? Well, I would agree with that, Your Honor. But I would say my position is, and I believe that this content, it's the advisory committee notes, Rule 701, make clear that a witness in a technical context, a witness can testify about the facts that they know. These are facts that he knows. The relevance of this is, and we can't lose sight of the fact that all that we were trying to do here in putting in this material is to show that there are just a few, a lot of this is just extra. You know, it's almost not necessary to achieving what we were trying to achieve, which is just show that there is an original work, okay, that these two companies, .4 and DCI, had works that were original. They had original authorship. And to show that the scope and size of these computer programs, there are hundreds of thousands of lines of code. And then in order to then make the point in the brief that under Section 1201 of the Digital Millennium Copyright, not much more was really required to meet this very minimal threshold test to just say, is there some copyrightable content here? Is there something that's worth protecting that would allow a remedy under the law? And so to not lose sight of that. This material, all this does, this is like equivalent to if you saw an advertisement for a car and it says it has a GPS system, it has this, it has that. That's all he's saying. And it's normal. If you find that this is expert, then you can't help you with this, or at least ask you if this is the point I think you were trying to make. Setting aside the two paragraphs that Judge Droney was asking you about, which you're attributing to or characterizing as essentially a sales pitch, your conclusion at paragraph 15, or excuse me, the affidavit's conclusion at 15, in your view is something you inserted in the affidavit for him to swear to sort of gratuitously because you were going to make the argument on the papers as a matter of law given these facts that he testified. That's correct, Your Honor. That's correct. Absolutely. And, okay, so the other piece. So was there a reason, and maybe you don't want to talk about it, that these two folks were not, and maybe others, but these two folks in particular weren't disclosed as experts during the discovery phase? Well, Your Honor, it was known to all the parties what the chief executives of the companies knew. They were the main witnesses. They were deposed a total of five times. And Mr. Chadwick actually helped. That doesn't answer the question, though, counsel, and the issue of whether they would be designated as experts was raised from the get-go, which is notable. And you may have had good reasons not to. You don't want your communications between you and the witness to be produced in the course of discovery. You don't want to show that it's you drafting the declaration and not the affiant. But so if you could answer Judge Hall's question. I was not counsel at the time, but the fact is that this case was litigated in a scorched-earth fashion, and one of the things that the opposing counsel did is he insisted not only that there be expert reports by these two individuals, but also, as you said, they said, and we think we're entitled to get communications with them, between them. And my predecessors and I both agree that the testimony here was not expert testimony. There were experts that testified to very esoteric issues of computer hacking, but the issues here were simply, this was, and this is a very important thing, Mr. Burden also, he introduced screenshots. There are 62 pages of screenshots that follow his affidavit. That is the text that a user of the Genesis program sees. And part of the claim is that's part of the copyrightable content that is protected by the passport security system. And that's something that in and of itself, in our view, the fact is this affidavit, he could have simply said, attached are some screenshots from my computer program. And if we hadn't said these other things that the Court found fault with, I think it's pretty clear that that would have been admitted. And that material, it's text, and there could be a dispute over how much copyright protection there might be to that. But my contention is, as we set forth in the briefs, that the, it's, at a minimum, there would be protection against 100 percent copying. And so that would be enough for purposes. Sotomayor. That's an argument that, let's concede that there are some lines in some of these paragraphs that the district court didn't abuse her discretion in concluding was expert testimony. You would say, but we should get an opportunity or we should have been given an opportunity to parse out which of these sentences and which of the exhibits that came in through these paragraphs are offending and which aren't. Absolutely, Your Honor. I mean, look, my contention is that if there are one or two things, if the, whether or not the programs were unique in one way or another in the marketplace actually is kind of surplusage. I never imagined that we would have this issue putting this in. I thought this gives some context to what these computer programs are. It has no materiality to the simple point of checking this one box of saying, look, there's a work protected under this title. We didn't anticipate this would be a serious issue. But at a minimum, I think that the court can say, here are the Genesis screenshots. That's that you need almost no introduction to that. They say, here are screenshots. This is content that a user of Genesis sees when they're using the program. And it's 60, you know, we just, these are just illustrative. We could have put in more. But we have 62 pages of stuff that in a minimum in its selection and arrangement is copyrightable at some level. So the, I'm sorry, Your Honor, you seem to be asking me a question. Well, I was just noting your red light's been on for a while. Yes, it is. You have two minutes for rebuttal. Okay. And, Your Honor, of course, I haven't been able to address, you know, virtually all the other issues. I mean, it's up to you how you want to do that. I could rest on my brief, but there are many other issues. I'm happy to rest on your briefs. Okay. Great. Thank you. Your Honor, Robert Bernstein, for the appellee in this case, later I'll be for the appellant and the other. If I may, we don't arrive on a blank slate here. I mean, two federal judges, Chief Magistrate Judge Mann and then Chief Magistrate Judge Amon, have independently considered the facts. She was a chief district judge. Right. Right. That's what I meant. You probably didn't. I might not have said it, but I meant it. You demoted her to a magistrate. In any event, they together have about 60 years of experience on the bench. Right. I mean, we are familiar with our colleagues in the Eastern District, so the point being. All right. Well, then let me move on to something that I think is very important. Go ahead. Could you? First, about the context. First, may I say something? If there was a scorched earth here, it was and continues to be on the other side. And just you have to understand what this case is. It started out as a licensing dispute over a $26,000 license. We had problems with it starting up. We presented that to them. They said we'll upgrade the whole thing for $32,000, which my client felt was a little exorbitant since they only paid $26,000 for the whole thing. They did go abroad to an expert consultant. He wasn't, as far as we knew, anything other than somebody who worked at Donga Labs. The efforts he's making to talk about cyber criminals in cases in Vermont, I'm going to ignore them, but they have no bearing on this. So thank you for the context, counsel. Could you address, with respect to the question of whether all of the paragraphs that contain some offending expert opinion, the appropriateness of the decision to strike all of those paragraphs and all exhibits attached to them. Sure. Where it seems to me, let me know if you disagree, that there's some offending language in there and some nonoffending language. And so just on the issue of whether they're expert testimony or not, as opposed to whether preclusion is the right remedy, okay, on the expert testimony, I think my opponent has missed the whole point of expert testimony disclosure. An expert can testify about things that he has no recipient knowledge of, and he can testify about hypotheticals, and all of the comparative statements that are being made are made in order to show copyrightability. So in every single paragraph where they say this is unique compared to others in the field, that's a comparative statement that is designed to show copyrightability. But just to run you through the wringer, as we did with your opposing counsel, page A, Appendix 460, this is the Burden Declaration, paragraph 4. Take the first sentence. Genesis consists of over 700 programs accessible through 65 separate menus. There's no expert testimony in that sentence, is there? I'm looking at it right now, Your Honor. No, it's the same thing. Oh, paragraph 4, sorry. Paragraph 4, the first sentence. Well, the first, I mean, if you want to parse each of, you know, sentence by sentence. We are asking you to parse it. So is it expert testimony or not, in your view? In my opinion, it is because it's the basis for and it's designed to form the comparison of unique. If I bring in some guy who testifies to how an accident happened as he observed it, which I am later going to use having an expert testify that it was X, Y, and Z that was the cause of the problem, the lay witness doesn't get to come in and talk about what he saw or what's in front of him? I think I understand better the question. To the extent he's not making a comparison and just describing his own, he can do that. Right. Okay. And he can probably, can he not, talk about what's out in the field? Because if he has developed something knowing that there's a lot of stuff out there that he's in competition with and saying, you know, I've got this and this is the best because it does this, this, and this, is that expert testimony? Because then I'm going to send you out to tell me that every car salesman out there is an expert. No, Your Honor, I think to the extent he's trying to establish copyrightability by comparing his to someone else. No, we're not asking that. We're asking about the specific paragraphs that are here where he's talking about his product. If you take out all the unique language and you take out the conclusion about copyrightability, then that could be put in, but then we're dealing with A car salesman who's selling me a Toyota saying this is unique is there as an expert? But that's a different thing. I got a bridge right across the river I'm going to sell you if you believe that. With respect, Your Honor, that's a very different situation. Here they're putting in testimony which is designed to prove copyrightability. That is something that you can't testify about without having some knowledge of what's out there. And they didn't they were not disclosed. So we really don't know what the basis of these opinions were. Let's say they could. Let's say they could make some of these statements if they had been disclosed. It's a different case. The real problem here is not that they couldn't testify as experts. We asked them at the Rule 16 conference in June of 2011, are you going to designate your CEO experts as experts? You asked them about their products during the course of their deposition? I don't think we asked any comparative questions. You asked them about their products. I wasn't the trial counsel, but I assume that one would. All right. But that doesn't let's step back a minute. It's a different question if you're dealing in a world where they were disclosed and we could depose them. We'd have no objection to whatever they want to say hypothetical. We would cross-examine them. We would have rebuttal experts. We'd be able to show that perhaps none of this is original. In software, there are so many functional elements, and I think Your Honors know that cases are legion where expert testimony is required to prove both copyright ability and infringement. And I think that without the opportunity to depose and test and cross-examine what they say is original. Didn't Judge Deary say that infringement was almost something that could be judicially noticed or words very close to that? Well, I think he actually didn't, all respect, he didn't understand that this was a DMCA case, not an infringement case, and he didn't even examine the copyright ability of anything. He was basically saying, you know, you seem to have circumvented something here to get around it. That seems to be a breach of contract. But beyond that, I don't think, and we even disputed that only because we had malfunctioning software. But Judge Deary, his initial impressions did not hold up after Magistrate Judge Mann and Judge Amin had looked at the facts in depth. Okay. So I'd like to point out one or two things. The advisory committee notes to 701, which my opponent quoted, they say the purpose of 701C, which is that you can't testify if it's based on specialized knowledge, is to prevent a party from conflating expert and lay opinion testimony, thereby creating an aura of expertise on a witness without satisfying the reliability standard for expert testimony in Rule 702. And they go on to say that if the testimony in any way is based on specialized knowledge, then it has to be 702. It was a doctor who was sued for medical malpractice who talks about how he performed a particular surgery and when he opened the patient up, what he saw and where he put clamps and that sort of thing, something that I would suspect none of, maybe nobody in this room has done or wants to know about. That's lay testimony, of course. Does that doctor have to be disclosed as an expert? No. If he's testifying about what he did. And yet a computer program developer who testifies about this is what I did and this is what I've developed and this is this, that's an expert? If, as I said before, if all he's doing is saying this is what I did on day 1 through 100, he can do that, because that's percipient testimony. But if he doesn't. So let's go back to the doctor for a minute. If the doctor says, you know, as I was taught in medical school and as we're laid out, I placed the clamp here, is that expert testimony? No, because he was present and taught. All right. Go ahead. What if he said, well, I did what I did because I've read a lot of treatises and I know that this is now the industry standard practice? That would be expert testimony, which is comparable to talking about this is unique and therefore copyrightable. Keep in mind, Your Honor, that this is a case where they declined to apply for a copyright registration certificate, so they didn't have a prima facie evidence of copyrightability. And therefore, they had to rely on these two declarations, because they were the only evidence. They could have disclosed them as experts and then we would have had a fine time cross-examining them. So how long? Let's say they had been disclosed as experts, hypothetically. But you weren't trial counsel, right? I wasn't, no. Did you work with trial counsel? No, I came in on the appeal, but I have worked with experts before. All right. But how long would it, like, I'll give you my personal example. You suddenly run up against an expert in a trial, in trial, and a trial judge says, well, you better give some time. All right, we're going to break at 3 this afternoon. You guys go depose him, find this, do that, and be ready to retry this case or start trial up again at noon tomorrow. Unfortunately, Your Honor, this would not be one of those cases. So how much time? Like six months? Sure, easy. Nine months? I don't know about nine months. Six months makes sense. How long was the continuance that was granted in this case to do other things? I'm not talking about experts, but to do other things. Around a year, right? It wasn't so much a continuance, but it was a year between the time that he ---- And nine months is less than a year. Well, I think we can agree on that. Good. All right. Okay. All right. Expert testimony or lay testimony? Do I have any more time, Your Honor? If you have another couple of points you want to make. Well, I do. I do have a couple of points. I'll rest on the briefs on points four, five, and six, which are access and abandonment and contract damages. You don't need to reach any of those because they're alternative grounds, but they're in the brief. For now, I would just want to say that when you take a deposition of a software expert, before you even take the deposition, you have to go over his report, and then you have to hire somebody to help you figure that out. Then you have to cross-examine him. Then your expert has to read his deposition. Then you have to put your expert up for a report, and they get deposed. So whether it's six months or nine months, I don't know. But the other point here is, after all that happened, the summary judgment papers would have to have been submitted again. And this was already a hugely expensive litigation, and I think that more delay wasn't really appropriate. I certainly am. I won't speak for my colleagues, but well aware of what's in balance here in terms of how this decision came down. So thank you very much, Mr. Gershman. Thank you. Yes, of course. You just said that the — make sure this is right. The abandonment issue is an alternative ground. That's not right. Which one? The abandonment question. That's not an alternative. Oh, no, that's not. I'm sorry. We're resting. The two alternative issues are the access, because the technological device has to protect against circumventing access to the work. That will rely on the brief. And the actual merits of the damages will rely on the brief. Abandonment is a direct appeal, and we'll rely on our brief on that, too. And the good news is, when you come to argue the other side, you won't need to change seats. You don't want me to have to change chairs? No, no. We don't have time for that. Thank you, Ron. Mr. Press. One thing I think is very important to keep in mind is the very limited nature of this copyrightability element of the Digital Millennium Copyright Act. I mean, the provision that this case is about says, no person shall circumvent a technological measure that effectively controls access to a work protected under this title. And the meat of this statute and the meat of everything that was done in this case is about the technological measures, whether they control access to a work. The work protected under this title is – I could not find – there was only one case that I could find where it was found that there was not a work protected under this title. This – I don't believe that this – there's very little interpretation of this statute. I don't believe that this section – this phrase was meant to do a lot of work. All it's supposed to do is say, is there something that's protected here that is within the general subject matter of copyright? Well, there's not a lot of case law because usually you go to the copyright office. Well, the thing is the copyright is a registration only creates a rebuttable presumption. Okay? And you have that one case, the Lexmark case, where there was an eight-line computer program and the other side mounted a functionality argument that ultimately was successful. Okay? So it could have been done in other cases. This is really the one case, and this is the only case in which summary judgment was granted against a plaintiff finding that there wasn't a work protected under this title. I don't believe this was meant to do a lot of work, this section. And the – the one thing that my colleague said was that if they had gotten discovery, then they could have gone and tried to make a – do a functionality argument. The – that is – that is something that applies in infringement context. Okay? When you argue that it can't be infringing, another party is allowed to use the same work because – because the subject matter of the copyright is something that is irreducibly a functional. But that is not what this statute is about, and that's not what this says. This is just – this – the Krigos case that we cite of this Court makes very clear that copyrightability is separate – is separate from functionality. That's a defense of a defendant to argue that there's no infringement. It's a separate thing. So this is a very, very limited, limited thing. And the – That is in the Copyright Act context. That would be in the Copyright Act. As opposed to the DMCA. Right. The DMCA – I think that the – all that was supposed to be here show is a very, very, very minimal proof. And we did that in showing here are these massive computer programs, and within them is – is a lot of text. Did you call these arguments to the district court? Yes, we did, Your Honor. Absolutely. And – but most importantly, the thing that I was so shocked by the opinion on was because the – in my view, whatever the court wants to say about the testimony of these witnesses, the screen content, which is what the Tri-State people used on their screens every day doing their data entry for 15 years, we attached that. They had that. That – there was no surprise there. And that by itself – Previously disclosed in discovery? Of course. It was on the drive. I mean, that's the content that they used every day. If they say they don't know what that is, then evidently they weren't using the program. The other thing I want to say is that the preclusion itself, even if it all was expert testimony, under Rule 37, preclusion is a very drastic remedy, and there are other possibilities under Rule 37, even if the court thinks that they're sanctions. The – if – however, if the – if the omission is substantially justified or harmless, then there's no punishment at all. And we argued – Do you think Rules 701 and 702 are subject to Rule 37? That was – well, this is the argument that – I mean, if they're not, then – In trial? In trial? I mean, I think that the argument was that the – that the – yes, that the expert report was undisclosed, and therefore there was a remedy under Rule 37. I believe that was the argument. The – if it's substantially justified, then the litigation position that the party takes, then there shouldn't be a remedy, because if a party is taking a position that's reasonable, then they shouldn't be punished. Perhaps there could be motion practice about it. And what happened here was, first of all, in given – in view of the Second Circuit law that we cite throughout our brief, we think that – we think we're right. But at a minimum, we think that it was substantially justified. But you don't have to ask me. In this situation, in the fee decision that followed, the judge said that it was substantially justified. The very same judge. I think you've cited that to us. Yeah. And – pardon me, Your Honor. I'll let you sit down, and you can be the appellee now. Thank you, Your Honor. Thank you, Mr. Press. I'm reserving three minutes. You've put down three minutes. That's fine, if you'd like that. Yes. And I probably – if I would be permitted, can I take one?